## HERRMANN v. HERRMANN.

(Supreme Court, Special Term, Kings County. July 13, 1904.)

MARRIAGE—COMMON-LAW MARRIAGE—EVIDENCE—VERDICT.

In a suit to establish a common-law marriage, evidence *held* insufficient to sustain a verdict in favor of plaintiff.

Action by Carletta Herrmann against George Herrmann to establish a common-law marriage. On motion to vacate a verdict in favor of plaintiff, and to dismiss the complaint. Motion granted.

See 98 N. Y. Supp. 655.

Gustavus A. Rogers, for the motion.

Francis B. Mullin (William W. Goodrich and Frank X. McCaffry, of counsel), opposed.

SMITH, J. The result of the trial of this cause strikingly illustrates the wisdom of the recent legislative regulation of nonceremonial marriages in the state of New York, and also the futility of expecting a verdict in matrimonial actions against a woman where the element of sympathy is involved, no matter what the merits of the case.

This case is unique in two respects: First, that there could have been gotten together, by chance, in the worldly wise city of New York, 12 men apparently as innocent and as credulous as the men who composed the jury; and, second, that the plaintiff, with a story so improbable, so inconsistent, and so unconvincing, with the affirmative evidence against her contention so overwhelming in its character, could have succeeded, by her attractive personality and rare dramatic ability, in inducing any 12 men to render a verdict that she had ever been married to the defendant. The story of the common-law marriage on the rear seat of a one-horse, two-seated vehicle, driven by a hackman at Ft. Lee, N. J., which was not observed by the alert driver on the front seat, the ceremonial marriage before a bogus justice of the peace in a summer house in the rear of a saloon, without a witness, and the marriage certificate then received, but subsequently lost, and to the existence of which no other person testified, might well form an appropriate plot for a comic opera, but it has no place in the realm of reality. All the circumstantial and convincing evidence in the case points not to marriage, but to the fact that there was no marriage. The introduction by the defendant of the plaintiff as Mrs. Herrmann and as his wife to third parties, and the letter of the defendant to plaintiff's mother, addressing her as "Dear Mother," are abundantly and satisfactorily explained by the evident desire of both parties to conceal their real relations to each other from the mother of the plaintiff and from strangers. In all the confidential correspondence between the parties, in which there could not be the slightest motive to play a part or to conceal the truth, there is not a hint or a suggestion that the relation of marriage existed between them. In the letters written by the plaintiff to the defendant after he had deserted her, as she said, without cause, there is no claim that there was any duty on his part to return to her or to provide for her. These letters alone should convince any reasoning mind that the writer was not a wife who had

been wronged by an undutiful husband. If she had been married to the defendant at Ft. Lee, N. J., it was the event of her life, and she would have taken every opportunity .to have exhibited her marriage certificate to her friends and to all persons interested in her. If the relations of the parties had not always been meretricious, she would never have consented after marriage to a rich husband to continue to live with him as she had previously done, under a name not his own, in an obscure apartment, not at all in keeping with his means and his station in life. She would not, if married, have failed to assert her marriage when she was asked, as I believe she was by that intelligent and honorable attorney, Mr. Heydt, a friend of the defendant's family, if she would not break off the dishonorable relations she was maintaining with the defendant. She would not, if married, have admitted, as I believe she did, to her friends, Mr. and Mrs. Dougherty, whose appearance and manner of testifying demonstrated their credibility, that she had no lawful claim to be considered the wife of the defendant, but that she intended to sue him to make him suffer. This plaintiff has the wit and the ability to construct upon the very considerable foundation of truth unwittingly placed at her disposal by the folly of the defendant the remarkable story told by her on the witness stand. She needed no aid to do this. But if her story is true, and she is a credible witness, then the defendant, or some one in his behalf, has been guilty of wholesale subornation of perjury. I do not believe it possible to frame a conspiracy so impregnable to attack, which involved the participation of so many persons so widely situated, and very many of whom were of excellent reputation, and could have had no possible interest in the result of the litigation. There never was a verdict in a court of justice which had so slight a foundation for truth. To allow it to stand would be a grave reflection on the administration of the law. It is useless to grant a new trial. After two trials, it must be that all available evidence has been presented, and no court sensible to its obligation to truth and justice can ever sanction a verdict in favor of the plaintiff. It is the duty of the court ultimately to decide the cause upon its own responsibility, for a jury trial of the issues is not a matter of right, and the findings of the jury are simply advisory. In accordance with what I deem it to be the right and duty of the court, I set aside and disregard the verdict of the jury, which finds that the plaintiff and defendant were ever married, and I find the fact to be that the parties to this action were never married, either ceremonially or otherwise, and I accordingly. direct judgment in favor of the defendant against the plaintiff, dismissing her complaint upon the merits.

Judgment accordingly.